OPINION
{¶ 1} Defendant-appellant, Mustafa Abdi Ibrahim, appeals from the August 14, 2003 judgment entry of the Franklin County Court of Common Pleas adjudicating him as a sexual predator pursuant to R.C. Chapter 2950. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On March 11, 2003, appellant was indicted on one count of aggravated burglary, one count of kidnapping, one count of gross sexual imposition, and one count of rape. On June 24, 2003, appellant pled guilty to gross sexual imposition and to the stipulated lesser-included offense of attempted rape. Upon application of appellee, State of Ohio ("the State"), the aggravated burglary and kidnapping counts of the indictment were dismissed. The trial court sentenced appellant to an aggregate term of five years' incarceration.
 {¶ 3} On August 8, 2003, the trial court conducted a hearing to determine if appellant should be classified as a sexual predator. The trial court noted on the record that it considered the presentence investigation report ("PSI") and the psychological evaluation of appellant conducted by Dr. Kristen E. Haskins. (Revocation and Sentencing Hearing, August 8, 2003, Tr. 9.) On August 14, 2003, the trial court issued a judgment entry adjudicating appellant to be a sexual predator. Appellant timely appeals, assigning the following sole assignment of error:
The trial court erred in classifying appellant as a sexual predator where the factual critieria to warrant such a designation were not present.
 {¶ 4} Recently, this court in State v. Messer, Franklin App. No. 03AP-169, 2004-Ohio-2127, articulated the proper standard of review for an appellate court on an appeal from a sexual predator adjudication hearing. Because sexual predator adjudication hearings "`necessarily arise in the context of an antecedent criminal conviction, and are largely concerned with an assessment of past criminal conduct by a defendant and his potential for future criminal conduct,'" the criminal standard of review of manifest weight and sufficiency of the evidence was appropriate. Id. at ¶ 8, quoting State v. Morrison (Sept. 20, 2001), Franklin App. No. 01AP-66, and citing State v. Baron,
Cuyahoga App. No. 80712, 2002-Ohio-4588 (applying criminal manifest weight of the evidence standard of review); see, also,State v. Bolin (June 15, 2001), Montgomery App. No. 18605.
 {¶ 5} Under the manifest weight of the evidence standard of review, the court of appeals, after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, there was such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548;Morrison, supra. With respect to sufficiency of the evidence, sufficiency is the legal standard applied to determine whether the evidence is sufficient to sustain a verdict as a matter of law. Thompkins, at 386.
 {¶ 6} In his sole assignment of error, appellant contends the trial court erred by classifying him a sexual predator. A sexual predator is defined as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E). Since rape is considered a sexually oriented offense, the issue becomes whether the State proved, by clear and convincing evidence, that appellant is likely to engage in future sexually oriented offenses. State v. Eppinger (2001),91 Ohio St.3d 158, 163; State v. Cook (1998), 83 Ohio St.3d 404,423-424.
 {¶ 7} In this case, appellant does not dispute that he was convicted of a sexually oriented offense; rather, he does contend the state failed to prove, by clear and convincing evidence, that he is likely to reoffend. An appellate court reviewing a finding that an appellant is a sexual predator must examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing standard. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 90. "`Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'"Eppinger, at 164, quoting Cross v. Ledford (1954),161 Ohio St. 469, 477. This court will not reverse a trial court's sexual predator judgment as being against the manifest weight of the evidence if there exists some competent, credible evidence going to all the essential elements of the case to support that judgment. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279; State v. Hudson, Delaware App. No. 02 CAA 12065, 2003-Ohio-7049, at ¶ 99.
 {¶ 8} R.C. Chapter 2950 was implemented to protect the safety and general welfare of the people of this state. Former R.C. Chapter 2950; State v. McKenna, Franklin App. No. 03AP-177,2003-Ohio-5997; Eppinger, at 165. In determining whether an offender is a sexual predator, R.C. 2950.09(B)(3)[1]
requires the trial court to consider all relevant factors, including those enumerated in the statute. Eppinger, at 166;State v. Maser (Apr. 20, 1999), Franklin App. No. 98AP-689. The factors of R.C. 2950.09(B)(3) are:
(a) The offender's or delinquent child's age;
(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender or delinquent child;
(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct.
 {¶ 9} No requisite number of these factors must apply before an offender is found to be a sexual predator, and the trial court may place as much or as little weight on any of the factors as it deems to be relevant. State v. Austin (Nov. 2, 2000), Franklin App. No. 00AP-184; State v. Degroat (Sept. 6, 2001), Franklin App. No. 00AP-1485. Even one or two factors are sufficient as long as the evidence of likely recidivism is clear and convincing. State v. Hardie (2001), 141 Ohio App.3d 1, 5.
 {¶ 10} In this case, the trial court found appellant to be a sexual predator based on appellant's past criminal behavior, the age of the victim (13) and her mental capacity, and the nature of the crime. (Revocation and Sentencing Hearing, August 8, 2003, Tr. 14.) The record of the hearing contained a PSI report, which set forth the version of events taken from appellant and the victim. The victim was a 13-year-old resident of the Lincoln Park apartment complex. Lincoln Park is largely populated with Somalian immigrants. On February 28, 2003, the day of the incident, the victim stated that she was walking home from a local recreation center with a friend when appellant approached her. The victim knew appellant from around the apartment complex. Appellant asked the victim to walk with him. She agreed and they walked to the rear of an apartment that appellant indicated was his residence. Appellant went to the front of the building, opened the rear door of the apartment, and invited the victim inside. According to the victim, appellant wanted to show her something. The victim told appellant no and he asked her a second time. After responding no a second time, the victim stated that appellant grabbed her and pulled her into the apartment.
 {¶ 11} Once inside, appellant pushed the victim from the kitchen to the living room, where appellant asked the victim, "So, what you wanna do?" (Psychological Evaluation pg. 12.) The victim told appellant she was a virgin and told him she wanted to leave. Appellant pinned the victim to the wall, unzipped her coat, and pulled up her shirt and bra, exposing her breasts. Appellant began kissing the victim on her neck and her breasts. The victim struggled and again told appellant that she wanted to leave. The victim told appellant that she was going to tell her mother that he tried to rape her. Appellant pushed the victim onto the couch, and forcibly removed her shoes, blue jeans, and panties. Appellant then pinned her shoulders to the couch and forcibly inserted his penis into the victim's vagina. The victim tried to push appellant off of her and repeatedly told appellant to stop and that she wanted to leave. While raping the victim, the two struggled from the couch to the floor and back to the couch. The victim reached down, grabbed appellant's penis, and removed it from her vagina. The victim took her clothes to the bathroom, cleaned up, got dressed, left the apartment, ran home and notified her mother of the rape.
 {¶ 12} The victim was taken to Children's Hospital where a rape examination was conducted and DNA evidence was collected. The victim's vaginal examination was normal, but there was a three-inch long abrasion on her left buttock, which was consistent with the victim's story of struggling with the appellant from the couch to the floor and back to the couch during the commission of the rape. The victim's mother explained to the detectives that her daughter attended special education classes, and reads at a third-grade level.
 {¶ 13} Appellant insisted that he had consensual sex with the victim. Appellant indicated that he thought the victim was about 16 or 17 years old. According to appellant, the two walked near a dumpster and the victim started hugging appellant. They walked behind an apartment, and the victim removed her shirt and her pants. She bent over an air conditioning unit, and invited appellant to engage in sexual intercourse with her. Appellant stood behind the victim and had consensual sex with her. Appellant stated that the sex occurred outside on the porch and not inside an apartment.
 {¶ 14} At the sexual predator hearing, appellant presented the psychological evaluation report of Dr. Haskins, which appellant attempted to introduce to assert that appellant had a low risk of reoffending based on psychological testing. Appellant maintains that although the trial court may assign whatever weight it wishes to a factor when making a sexual predator adjudication, appellant argues that the trial court failed to articulate how appellant is likely to reoffend, considering Dr. Haskins' report opined that appellant is at a low risk of re-offending.
 {¶ 15} The report prepared by Dr. Haskins sets forth extensive background information regarding appellant's family, education, relationship, employment, substance abuse, legal, medical, mental health and sexual histories. In particular, Dr. Haskins noted that the usual psychological testing was not completed on appellant due to the language differences that would likely result in a misinterpretation of the personality test questions. Dr. Haskins noted that the majority of appellant's difficulties resulted from the transition between the Somalia and American cultures. As a result, appellant appears to be strongly influenced by a group of Somali youth and men who live in the Lincoln Park apartment complex, who do not attend school or are unemployed.
 {¶ 16} With regard to appellant's substance abuse, Dr. Haskins noted that appellant used to drink beer and liquor and smoke marijuana daily. However, after appellant was placed on probation in August 2002, he did not engage in any substance abuse.
 {¶ 17} Regarding his legal history, Dr. Haskins noted that appellant was on three years' probation for breaking and entering at the time he committed the instant offenses, and had previously been arrested for criminal damaging, criminal trespass, assault and resisting arrest.
 {¶ 18} With regard to his relationships and sexual history, the evaluation noted that appellant's first sexual experience was at the age of 15, where he had intercourse with a 15-year-old girl. Appellant has had four sexual partners, has admitted to watching sex-related videos and movies, and has masturbated. Appellant reported that he never had daydreams about having sex with younger children or that he had ever forced sex.
 {¶ 19} With regard to the psychological test results, Dr. Haskins noted that there were no signs of serious mental illness such as psychosis, major depression or serious anxiety problems. Dr. Haskins noted that while appellant had difficulties with psycho-social adjustment related to relationships, employment, nonviolent offending, and supervision failure, there were no difficulties of sexual deviation, history of abuse or neglect, and major mental illness.
 {¶ 20} The report also contained a discussion of each of the former R.C. 2950.09(B)(2) factors. In particular, the report indicated that appellant's current age of 19 is an age that is found to correlate with a high risk for violent recidivism. The report acknowledges appellant's criminal history. Also noted was the victim's age (13), and that the offense for which appellant was convicted involved only one victim and did not involve the use of drugs or alcohol to impair the victim. Further noted was the fact that appellant had taken advantage of a vocational program that his probation officer referred him to, but that appellant had not sought out a substance abuse evaluation per the probation officer's recommendation. As to mental illness or disability, the report notes that appellant evidences no signs or symptoms of psychosis, major depression, and serious anxiety disorder.
 {¶ 21} The report further noted that appellant's sexual conduct does not appear to be part of a demonstrated pattern of abuse, as this was a single incident. Appellant did not display any cruelty or make one or more threats of cruelty. Finally, as to additional behavioral characteristics that contributed to appellant's conduct, the report indicated that appellant thought the victim was romantically interested in him.
 {¶ 22} As to appellant's likelihood of committing another sexually oriented offense, Dr. Haskins noted that although appellant pled guilty to gross sexual imposition and attempted rape, he continued to indicate that the sex was consensual, and such a denial of sex offending is not predictive of future risk of sexual offending. Dr. Haskins opined that based on the evaluation, consideration of R.C. 2950.01 and 2950.09, that appellant had a low probability to engage in the future in one or more sexually oriented offenses.
 {¶ 23} Sexual predator adjudication hearings are fact specific and must be analyzed on a case-by-case basis. State v.Clary (Oct. 12, 2000), Franklin App. No. 99AP-1465, citingMaser, supra. With regard to Dr. Haskins' report, we have continually held that the trier of fact is free to disregard or disbelieve evidence that appellant presents. Reder v. Antenucci
(1989), 62 Ohio App.3d 139, 144; State v. Leonard (June21, 2001), Franklin App. No. 00AP-1229 (expert testimony is not binding on a court in a sexual predator proceeding); State v.Dickerson (1989), 45 Ohio St.3d 206, 210 ("[e]xpert testimony, even when uncontradicted, is not necessarily conclusive"); Statev. Brown (1983), 5 Ohio St.3d 133, 135 (a trier of fact is permitted to reject an expert's opinion, even if uncontradicted, so long as there exists an objectively discernible reason for doing so).
 {¶ 24} In this case, the trial court was convinced by clear and convincing evidence that appellant should report as a sexual predator upon his release from the institution based on appellant's past criminal behavior (R.C. 2950.09[B][3][b]), the age of the victim (13) (R.C. 2950.09[B][3][c]), and her learning disability/emotional or mental problems, and the nature of the crime (R.C. 2950.09[B][3][h]). (Revocation and Sentencing Hearing, August 8, 2003, Tr. 13)
 {¶ 25} The victim was only 13 years old at the time of the offense. Regardless of appellant's belief that the victim was 16 or 17 years old, his conduct was reprehensible. In State v.McDonald, Franklin App. No. 09AP-853, 2004-Ohio-2571, we noted that:
The age of the victim is probative because it serves as a telling indicator of the depths of offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, repre-hensible crimes in our society. Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable.State v. Daniels (Feb. 24, 1998), Franklin App. No. 97APA06-830, affirmed (1998), 84 Ohio St.3d 12, 701 N.E.2d 689; see, also, State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 53.
 {¶ 26} Appellant's criminal history, although not of a sexual nature, also supports the trial court's decision. R.C.2950.09(B)(3)(b); State v. Hill, Franklin App. No. 01AP-1237, 2002-Ohio-2882, at ¶ 21. Appellant's history of criminal conduct reflects his lack of restraint and his general disregard for the rights of other people. In December 2001, appellant pled guilty to breaking and entering of a Whittier Market where he stole razor blades and potato chips. Appellant was placed on probation for three years. In July 2002, appellant was arrested for criminal damage and criminal trespass for prying opening a window, punching holes in the walls and damaging the interior of an apartment. Appellant pled guilty to criminal trespass and was sentenced to one year of probation. In September 2002, appellant was arrested for assault and resisting arrest for grabbing a female by the arm, attempting to hit her with a beer bottle, and later failing to stop while being pursued and struggling while being handcuffed by an officer. Appellant pled guilty to assault and was sentenced to 10 days in jail. The records of the Franklin County Adult Probation Department revealed that appellant did not adjust to probation requirements of his breaking and entering conviction. Appellant failed to obtain employment, pay the court costs, obtain Netcare assessment, and was convicted of subsequent offenses. (R.C. 2950.09[B][3][f].)
 {¶ 27} Further evidence was presented to demonstrate appellant's continuous disregard for the rights of other people. At the sentencing hearing, Officer William J. Wilson, who worked patrol on the south end of Columbus, Ohio, testified that appellant would hang out with a group of Somalian males in the Lincoln Park apartment complex who are known for harassing and preying on other Somalians in that area. (Tr. 4.) Officer Wilson testified that there was at least one report where the group broke into a home where people were asleep; however, no one was apprehended because the victims would not identify the perpetrators.
 {¶ 28} Although appellant did not display any "cruelty or ma[k]e one or more threats of cruelty" towards the victim, appellant did pull the victim into the apartment, forcibly remove her clothing despite her pleas to stop and that she was a virgin, and forcibly rape her. These facts also support the trial court's decision. R.C. 2950.09(B)(3)(i).
 {¶ 29} Finally, even though the trial court did not consider this factor, we find that it is relevant to appellant's sexual predator determination. Even after appellant found out that the victim was 13 years old and not 16 or 17 years old, he still maintained that the whole encounter was consensual. Appellant's lack of remorse and acknowledgement of the crime weighs in favor of a sexual predator finding. State v. Kendrick (Sept. 30, 1999), Franklin App. No. 98AP-1305; see, also, State v. Ivery
(May 23, 2000), Franklin App. No. 99AP-628; State v. Ayers
(Sept. 15, 1998), Franklin App. No. 97APA11-1556; State v.Condron (Mar. 27, 1998), Montgomery App. No. 16430; State v.Hill (May 21, 1999), Montgomery App. No. 17246; R.C.2950.09(B)(3)(j).
 {¶ 30} Given these factors, there was sufficient evidence for the trial court to find, by clear and convincing evidence, that appellant was likely to re-offend and that, therefore, he should be classified a sexual predator. This same evidence demonstrates the trial court's judgment was not against the manifest weight of the evidence. As such, appellant's sole assignment of error lacks merit and is not well-taken.
 {¶ 31} For the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Bryant, JJ., concur.
[1] R.C. Chapter 2950 was amended effective July 31, 2003. R.C.2950.09(B)(2) is now 2950.09(B)(3).